BAILEY v. SEYMOUR.

1. MARRIED WOMAN—MORTGAGE.—A mortgage executed by a married woman in 1892, charging her separate estate with the payment of the debt, and declaring that the debt was for the benefit of her separate estate, is gov-

erned by the act of 1891 (20 Stat., 1121), which deprives her of the power to make a valid promise to pay the debt of another.

2. IBID.—IBID.—NEGOTIABLE PAPER—PURCHASER.—But the note secured by the mortgage having declared that it was for value received, and note and mortgage having been transferred by the payee in payment of a pre-existing debt to his creditor "without recourse" before maturity, such creditor, having no notice contrary to the declarations contained in the note and mortgage, took both as negotiable commercial paper, free from the defence which the maker could have interposed to an action against her by the payee—that the debt secured was the debt of the payee and not her own.

3. IBID.—IBID.—ESTOPPEL.—Where a married woman executes a promissory note, and secures it by mortgage, which is thereby made also negotiable, and declares on the face of the papers that the debt is her own, she is estopped to aver the contrary against an innocent purchaser for value before maturity, unless she can show that such purchaser knew that the debt was not her own, and, therefore, was not misled by her representations.

Before WITHERSPOON, J., Laurens, September, 1893.

Action by M. S. Bailey and W. J. Bailey, bankers and partners as M. S. Bailey & Son, against M. R. Seymour.

*Mr. F. P. McGowan*, for appellant.

*Messrs. C. J. Hunt* and *Johnson & Richey*, contra.

September 12, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to foreclose a mortgage of real estate, executed on the 23d January, 1892, to secure the payment of a promissory note, bearing even date with said mortgage, for the sum of $450. The note was made by the defendant, M. R. Seymour, payable to one J. E. Griffin or order on the 15th day of November, 1892, and was by him endorsed in blank, and contained these words: "And I, M. R. Seymour, hereby charge my separate estate with the payment of this note." The mortgage recited as follows: "Whereas, I, the said M. R. Seymour, am well and truly indebted unto J. E. Griffin in the sum of four hundred and fifty dollars by virtue of a promissory note," and, after describing the note above referred to, proceeds in the usual form to con-

vey the real estate in question to the said J. E. Griffin, to secure the payment of the said note, and contains the following declaration: "And I, the said M. R. Seymour, do charge my separate estate with the payment of said note, debt, mortgage, and all costs that may be incident to the collection of the same, if necessary; and I do declare that said debt is for the benefit of my separate estate." This mortgage contained the following words, endorsed thereon: "In consideration of four hundred and fifty dollars, paid me by M. S. Bailey & Son, bankers, I hereby sell, assign, transfer the within note and mortgage to M. S. Bailey & Son, without recourse, this January the 26th, 1892. (Signed) J. E. Griffin."

The plaintiffs, having thus become the owners and holders of the said note and mortgage, instituted this action on the 5th of January, 1893, to foreclose said mortgage. The defendant answered, setting up sundry defences, the main and only one passed upon by the Circuit Judge being that, inasmuch as the defendant was a married woman at the time, she had no power to make the contract evidenced by the note and mortgage upon which the action was based, because the said note was a mere accommodation note, made for the benefit of J. E. Griffin, who seems to be the son of the defendant, and used by him for the purpose of taking up a past-due note held by plaintiffs against said Griffin, upon which J. H. Wharton, Joseph Pearce, and F. D. Coleman were endorsers; and that defendant herself never received any benefit from the transaction. The testimony was taken by a referee, and the same is set out at length in the "Case," together with sundry objections to the admissibility of portions thereof. The Circuit Judge, without passing directly upon the several objections to the testimony, sustained the defence above set out, and rendered judgment dismissing the complaint. From this judgment plaintiffs appeal upon the several grounds set out in the record, which, under the view we take of the case, need not be repeated here; for it seems to us that the controlling question is whether the Circuit Judge erred in holding that, under the facts as found by him, the defendant, being a married woman, had no power to make the contract sued upon.

We agree with the Circuit Judge that the case must be controlled by the provisions of the act of 1891 (20 St., 1121), which expressly invests a married woman with power "to bind herself by contract, in the same manner and to the same extent as though she were unmarried," *except* that she shall not have the power "to become an accommodation endorser, guarantor, or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person." The question, therefore, is whether the facts as found by the Circuit Judge, viewed in the light of the settled rules of law, are sufficient to show that the contract in question falls within any one of the excepted class of contracts which a married woman is denied the power to make.

The finding of the Circuit Judge upon this point is expressed in these words: "That defendant executed said note and mortgage to secure a past due debt of J. E. Griffin, payable at plaintiffs' bank, signed [endorsed] by J. H. Wharton, Joseph Pearce, and F. D. Coleman;" and "that the defendant did not receive any portion of the money realized by the discount of her note and mortgage by plaintiffs." Now, while it may be true that in a contest between J. E. Griffin and the defendant, such a finding of fact might be sufficient to protect the defendant, yet the question here presented, where the contest is between an innocent endorsee and assignee of Griffin and the defendant, is very different. It will be observed that the note was a negotiable paper, transferred before maturity, and carried with it the same protection to the mortgage, its accessory, as such paper is entitled to (*Carpenter* v. *Longan*, 16 Wall., 271; *Kenicott* v. *Supervisors, Id.*, 469; *Dearman* v. *Trimmier*, 26 S. C., 506; *Patterson* v. *Rabb*, 38 S. C., 138), and where neither the note nor the mortgage contained anything whatever to show that the contract evidenced thereby was a contract for the benefit of another, but, on the contrary, where the mortgage expressly showed by its recital, above copied, and by its explicit declaration to that effect, that the debt secured thereby was the debt of the defendant herself, and not the debt of any one else, it seems to us that upon the plainest principles of equity, the defendant should be estopped

from averring to the contrary, unless she could show that plaintiffs were not misled thereby, but that they knew, or ought to have known, that the contract evidenced by these papers, though purporting to be her own contract, was really made for the benefit of her son.

To allow a married woman to execute a negotiable note, secured by a mortgage, bearing no evidence on its face that the contract evidenced thereby was for the benefit of another, and, on the contrary, the mortgage bearing evidence on its face that it was intended to secure a contract of the married woman, and to escape liability, by offering evidence contradictory of her representations, and tending to show that such papers were really intended to secure the debt of another, would operate as a fraud upon the innocent holder of such papers, who had in good faith advanced money thereon, and, hence, the married woman is estopped from offering such evidence contradictory of her representations. If, however, she can show that such innocent holder, before advancing his money, knew, or ought to have known, that such representations were untrue, and that, in fact, the contract was made for the benefit of another, and not for the benefit of the married woman, then no estoppel would arise, as in such case the person advancing the money would not have been misled by such false representations. This is in accordance with the well settled rule, clearly established, and constantly recognized in cases arising under the married woman's act of 1882 (*Brown* v. *Thomson*, 31 S. C., 436, and many other cases, especially *Nott* v. *Thomson*, 35 S. C., 461); and the principle upon which that rule rested is clearly applicable here.

Now here, as we have seen, neither the note nor the mortgage contained anything to show that the contract evidenced thereby was not the contract of the defendant, but, on the contrary, the recital in the mortgage that the defendant was "well and truly indebted unto J. E. Griffin in the sum of four hundred and fifty dollars by virtue of a promissory note," describing the same, as the note intended to be secured by the mortgage, together with the positive declaration "that said debt is for the benefit of my separate estate," amounted to an

explicit representation that the debt secured by these papers was the debt of the defendant herself, and not the debt of any other person; and the defendant is estopped from denying such representation, unless she had shown that the plaintiffs, at the time of advancing their money, either knew or ought to have known that such representations were not true. As was said in *Nott* v. *Thomson, supra,* a "creditor, when he sues a married woman, must show that the debt was contracted for the benefit of her separate estate [under the law as it then stood]; but, if she admits that in terms, this admission, under the doctrine of estoppel, stands for proof, and the plaintiff has proved his case; but, if the married woman contests the estoppel, the *onus probandi* shifts, and she must show that by such admission he was not misled."

So here, the plaintiffs having shown that by the terms of the mortgage the defendant had admitted that the debt was her own, if she desired to contest the estoppel arising from such admission, the burden of proof was upon her to show that the plaintiffs were not misled by such admission. But there is not only no finding of fact to that effect, but there is no evidence to sustain such a finding. On the contrary, one of the plaintiffs—the one who seems to have negotiated the transaction—when examined as a witness for defendant, expressly says: "We had no notice of any equity, offset, or counter-claim against the Seymour note and mortgage when we discounted them. We took the paper at what it expressed on its face, and had no reason to think there was anything wrong as to the consideration. The paper expresses on its face to be for valuable consideration, and we took them relying on their own statements. I mean both the note and mortgage. We acted upon the representation contained in the note and mortgage." It seems to us that the Circuit Judge erred, either in overlooking or in not giving due weight to the express representations contained in the mortgage.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary.